ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 8 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

WSD

| | |
|---|---|
| Don W. Lane | : **CIVIL ACTION NO.** |
| Plaintiff | **1:15-CV-1767** |
| v. | : |
| Jacob J. Lew, Secretary of the Treasury | : |
| Defendant | : |
| _____ | : |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Don W. Lane and for his Complaint against

Defendant Jacob J Lew, Secretary of the Treasury hereby states as follows:

1

## JURISDICTION AND VENUE

1. The court has jurisdiction of the action under Title VII of the Civil Rights Act of 1964, as codified, 42 USC §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991) and the Rehabilitation Act of 1978.

2. Jurisdiction is specifically conferred upon the United States District Court by the aforementioned statutes as well as 28 USC §§1331, 1343 and 1367. Jurisdiction may also be appropriate under 42 USC §§ 1981, 1983 and 1985(3) as amended by the Civil Rights Act of 1991.

3. Venue is proper in this district pursuant 28 U.S.C. § 1391, as a substantial portion of the acts and omissions giving rise to this action occurred in the Northern District of Georgia. 28 U.S.C. §§ 1391 (b).

## **PARTIES**

4.  Plaintiff, Don W. Lane (Plaintiff), is a black male citizen of the
    United States and resides within this district at 6200 Bakers Ferry
    Road, Apt. 220, Atlanta, GA 30331.  Plaintiff is a current employee of
    the defendant agency at the Department of the Treassury, Internal
    Revenue Service, 4385 Chamblee Tucker Road, Chamblee, GA
    30341.

5.  Defendant, Jacob J. Lew, Secretary of the Treasury, whose address is
    Department of the Treasury, 1500 Pennsylvania Avenue, NW,
    Washington, D.C. 20220.

## **ADMINISTRATIVE PREREQUISTITES**

6.  I have filed a charge of employment discriminationon the bases of my sex, race and disability against the defendant with the agency and with the Equal Employment Opportunity Comission (EEOC).

7.  The EEOC case was acknowledged on September 15, 2014 and was docketed as EEOC No. 410-2014-00346X. A copy of the EEOC Acknowledgment and Order is attached hereto as Exhibit A.

8.  More than 180 days have passed since the complaint was acknowledged by the EEOC on September 15, 2014. No hearing has been held and no decision has been rendered in EEOC No. 410-2014-00346X by the EEOC as of the filing of this complaint.

9.  The agency administrative prerequisites for filing a complaint of employment discrimination in this court have been fully satisfied.

4

# FACTUAL ALLEGATIONS

10. The agency has discriminated against me on the bases of my race, black and my sex, male.

11. The agency has retaliated against me . . .

12. The agency has harassed me . . .

13. The agency management official(s) in plaintiff's chain of command knew or should have known that the plaintiff is a black male citizen of the United States.

14. The agency management official(s) in plaintiff's chain of command knew or should have known that plaintiff has engaged in protected activity in the past.

15. The agency management official(s) in plaintiff's chain of command know or should know that plaintiff is currently engaged in protected activity.

16. On June 28, 2013, agency management official(s) changed plaintiff's timesheet, Form 3081 from 4 hours of Administrative Leave to 4 hours of Annual Leave.

17. On October 23, 2013, management official(s) refused to grant plaintiff reasonable official time under its policy based on Title 29CFR §1614.605.

18. On November 13, 2013, agency management official(s) issued an unwarranted memorandum to plaintiff alleging plaintiff's failure to follow instructions.

19. On November 18, 2013, agency management official(s) issued an unwarranted memorandum to plaintiff alleging plaintiff's insubordination.

20. On November 21, 2013, agency management official(s) issued an unwarranted memorandum to plaintiff alleging plaintiff's failure to follow Aspect Sign-on Procedures.

21. On November 21, 2013, agency management officials requested medical documentation from plaintiff that was not required by the Collective Bargaining Agreement (CBA).

22. On November 21, 2013, agency management officials requested that plaintiff change his tour of duty in a manner contrary to the provisions of the IRM.

23. On November 25, 2013, agency management official(s) issued an unwarranted memorandum to plaintiff alleging that he engaged in unprofessional conduct causing a workplace disruption.

24. On December 11, 2013 agency management official(s) refused honor plaintiff's written request to be provided with a true and correct copy of his signed annual performance appraisal.

25. On December 30, 2013, agency management official(s) intentionally failed honor his written request to be provided with copies of his SETR Time and Attendance records.

26. On January 7, 1014, agency management official(s) denied plaintiff reasonable official time under its policy based on Title 29 CFR § 1614.605.

27. The agency management official(s) inappropriately used the ASPECT telephone Reason Code data for the purpose of creating performance and conduct issues against plaintiff.

28. The agency management official(s) knew and/or should have known that the agency had determined that Reason Code data reports will be used solely for real time management of call volumes and that information obtained from ASPECT, or the use of Reason Codes by employees, will not be used to create a numerical rating for an employee.

29. The agency management official(s) knew and/or should have known that the agency had determined that the information obtained from ASPECT or the use of Reason Codes by employees may, however, be used as a performance indicator. For these purposes a performance

8

indicator is merely something that alerts a manager to observe or monitor an employee's work more closely.

30. The agency management official(s) first level manager is alleged to have read the "Custom View" showing that plaintiff's Aspect phone was in the wrong code when she was away from the work area and away from equipment to monitor Aspect.

31. The automated time tracking system is not designed nor intended to be used as a system to monitor, measure or evaluate average handle time, time and attendance issues or wrap time." Memorandum of Understanding Covering Customer Service Operations Between the Internal Revenue Service and the National Treasury Employees Union. Signed 03/20/2012. p. 21.

32. The agency management official(s) requested medical documentation from plaintiff when such documentation is not required by the collective bargaining agreement or by agency policy.

9

33. The regular tour of duty for Plaintiff is 7:00 a.m. to 3:30 p.m.
    Monday – Friday, weekends off.

34. On 11/19/2013, Plaintiff took 8 hours of sick leave.

35. On 11/20/2013, Plaintiff took 8 hours of sick leave.

36. On 11/21/2013, Plaintiff took 4 hours of sick leave and reported for
    duty at 11:00 a.m.   Upon his arrival for duty, the first level manager
    requested medical documentation from Plaintiff to support the 4 hours
    of sick leave he used between 7:00 a.m. and 11:00 a.m. that morning.

37. As of 11/21/2013, Plaintiff had clearly not requested sick leave that
    exceeded "three (3) consecutive workdays."  CBA, Article 34, Section
    3B.

38. The CBA provides that: "Employees may be required to furnish a
    medical certificate or other administratively acceptable medical
    evidence to substantiate a request for approval of sick leave if sick

leave exceeds three (3) consecutive workdays." CBA, Article 34, Section 3B.

39. Based on the provisions of the CBA, the agency management official's request for medical documentation from plaintiff on 11/21/2013 was patently improper and was intended to harass and retaliate against the Plaintiff for engaging in protected activity that was known to the first level manager.

40. Upon arrival for duty on 11/21/2013 at 11:00 a.m., Plaintiff worked from 11:00 a.m. until 11:30 a.m., at which time, he took a scheduled 30 minute lunch break based on his regular 8 hour tour of duty.

41. The agency management official stated in writing that plaintiff was not entitled to an unpaid lunch break because he had not worked at least two (2) hours prior to taking lunch.

42. The agency management official(s) intentionally attempted to change the plaintiff's tour of duty without authorization or documentation in violation of the IRM when a part of plaintiff's established tour of duty

11

is taken as leave.  <u>IRM 6.610.1.2.8</u>;  <u>MEMORANDUM OF UNDERSTANDING BETWEEN THE NATIONAL TREASURY EMPLOYEES UNION AND THE INTERNAL REVENUE SERVICE REGARDING THE IMPLEMENTATION OF A REVISED LUNCH PERIOD POLICY AND A NEW BREAK POLICY dated 04/03/2013.</u>

43. The agency management official(s) intentionally made unauthorized changes to the provisions of the IRM and a MOU on lunches and breaks with respect to plaintiff.  <u>IRM 6.610.1.2.8</u>;  <u>MEMORANDUM OF UNDERSTANDING BETWEEN THE NATIONAL TREASURY EMPLOYEES UNION AND THE INTERNAL REVENUE SERVICE REGARDING THE IMPLEMENTATION OF A REVISED LUNCH PERIOD POLICY AND A NEW BREAK POLICY dated 04/03/2013.</u>

44. The agency management official(s) intentionally put the plaintiff under extraordinary scrutiny as compared to other similarly situated employees.

12

45. The agency management official(s) intentionally engage in the selective creation and enforcement of rules that are only intended for and applied to plaintiff.

46. Even though nearly every employee on the campus has at least one electronic device that is visible in their cubicle most of the time, plaintiff's management official intentionally enforces a rule against visible electronic devices against only the plaintiff.

47. The agency management official(s) directed Plaintiff "not to use [his] table during work hours" when no other similarly situated agency employees received such a directive.

48. The first level manager is alleging to have spoken to plaintiff when she had not said anything to him.  Additionally, since the first level manager states that she had spoken to the entire team about the time code to put the ASPECT phone in for the scheduled training, there was no need for her to publicly question plaintiff about the matter and to then allege that plaintiff created a disturbance when he requested

13

that she speak up and/or repeat what she was saying to him to acccomodate his disability.

49. The agency management official(s) refuses to make a common sense reasonable accommodation for plaintiff's disability of hearing loss by alleging that plaintiff created a "disturbance" when he asked the management official to repeat what she was saying and/or to speak up.

50. The agency management official(s) claimed on a few ocassions to be able to determine the level of plaintiff's hearing disability without documented formal medical training.

51. The agency management official(s) refused to grant reasonable official time to plaintiff to respond to discovery requests and to complete a declaration requested by an EEO investigator in accordance with Management Directive 110 and its own policy which is based on the provisions of Title 29 CFR § 1614.605.

52. The agency management official(s) requested that Plaintiff change his timesheet for the week ending 12/28/2013 to remove the

14

administrative time that was used on 12/27/2013 in an interview with an official from the EEO office that was previously approved by the acting manager on or about12/26/2013.

53. The agency management official(s) refuses to indicate on a copy of Form SF-71 whether the Plaintiff's request for leave has been approved causing the Plaintiff to not know whether the requests for leave have been approved or disapproved.

54. The agency management official(s), Melinda Carlislee states in nearly every conversation with plaintiff that she takes issue with the "tone" of Plaintiff's speech and /or the "attitude" of the Plaintiff and threatens unwarranted and unspecified disciplinary action against Plaintiff without affording the opportunity for Plaintiff to be represented by the union at these meetings.

55. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages.

.

15

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment against

Defendant providing the following relief:

(a) Compensatory damages in whatever amount in excess of $_____.,

exclusive of cost and interest that Plaintiff is found to be entitled;

(b) Punitive/exemplary damages against Defendant in whatever amount,

exclusive of cost and interest , that Plaintiff is found to be entitled;

(c) An order placing Plaintiff in the position that she would have been in

had there been no violation of his rights;

(d) An order enjoining /restraining Defendant from further acts of

discrimination or retaliation;

(e) An award of interest, costs and reasonable attorney's fees;

(f) Any and all other remedies provided pursuant to the ADA, the

Rehabilitation Act, and the Civil Rights Act of 1991; and

(g) Such other and further relief as the Court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct to the
best of my knowledge, information, and belief.

May18, 2015

Don W. Lane

6200 Bakers Ferry Road SW, Apt 220

Atlanta GA 30331-8395

404-992-7896